## DUNKELL *v.* SIMONS *et al.*

### (*City Court of New York, General Term.* May 31, 1889.)

1. MASTER AND SERVANT—DISCHARGE—CONDONATION.

    Voluntarily accepting services from an employé subsequent to his being so intoxicated, while in the discharge of his duties, as to justify his dismissal, amounts to a condonation of the offense.

2. SAME—DISOBEDIENCE TO ORDERS.

    Plaintiff, an experienced salesman in defendants' employ, had often been told by them to use his own judgment in making sales. Defendants had some geese, worth four or five dollars, which they told plaintiff to sell for eight or nine cents per pound. The geese were inferior and unmerchantable, and plaintiff, using his best judgment, accepted an opportunity to sell them for seven cents per pound, believing defendants' direction to be in the nature of advice. *Held,* that whether this constituted disobedience justifying plaintiff's discharge was a question of fact for the jury.

Appeal from trial term.

This was an action by Albert Dunkell against Henry F. Simons and Frederick G. Cunningham, trading as H. F. Simons & Co., to recover damages for plaintiff's alleged wrongful discharge from defendants' service. There was a verdict and judgment for plaintiff, and defendants appeal.

Argued before McADAM, C. J., and NEHRBAS and HOLME, JJ.

*Stapler & Wood,* for appellants. *Henry Parsons,* for respondent.

PER CURIAM. We hold that an employé, to retain his employment, must be sober, attentive, obedient, and polite, and that one act of inebriety, want of attention, willful disobedience, or rudeness, while engaged in the performance of his duties, may justify his discharge. Applying these principles to this case, we hold that the conduct of the plaintiff on December 31, 1887, in taking quinine mixed with whisky, and repeating the dose at intervals, was misconduct, and this whether the plaintiff had the malaria or not. If the plaintiff was ill, and required a compound calculated to intoxicate a person, and incapacitate him from properly attending business, he should have remained at home, or repaired to some place where his condition would not have been observed. This misconduct was sufficient to justify the plaintiff's discharge, if the defendants elected to adopt that course. But they did not exercise this option. They continued the plaintiff in their employ until January 5, 1888, when they discharged him for another reason. The letter of discharge is in these words: "New York, January 5th, 1888. We regret to notify you that, on your refusal to do as instructed, we this day cancel your engagement. H. F. SIMONS & Co." The contract of hiring was in writing, dated April 1, 1887, and was at the rate of $1,600 "for the year," payable weekly or monthly as due, so that by interpretation the hiring was for the year. The question, therefore, is whether the plaintiff was rightfully or wrongfully discharged. The offense of December 31, 1887, was waived by the defendants by continuing the plaintiff in their employ up to and including January 5, 1888, and by then discharging him for another reason. By voluntarily accepting services after the breach, it was condoned by the defendants. Wood, Mast. & Serv. § 121.

This brings us down to the cause of the discharge, *i. e.*, disobedience of orders. The defendants had a lot of geese, amounting to about four or five dollars' worth, which they told the plaintiff to sell for eight or nine cents a pound, and he received one cent per pound less. They were inferior, unmerchantable geese, and the difference between the sum at which the plaintiff sold them and the sum at which he was requested to sell them aggregated on the lot from 50 to 60 cents. The defendants had frequently told the plaintiff to use his best judgment in making sales; indeed, "use your own judgment," was a common phrase with the defendants. Taking the direction as an advice from his employers, and using his own best judgment in connection with it,

it can hardly be said that the difference of 50 or 60 cents, between the advice of the defendants and the plaintiff's best judgment and efforts, constituted willful disobedience to the defendants' orders. The holidays had passed, the geese were not in prime order, but old and depreciated, and, being of a perishable nature, it was important that no reasonable chance for a sale be neglected. The use of judgment was called into requisition, and the direction to sell at a specified rate was more in the nature of advice than of command. The plaintiff evidently understood the matter in this way. The reasonableness of the order, as a ground of discharge, was under all the circumstances one of fact for the jury, and was properly submitted to them by the trial judge. Wood, Mast. & Serv. § 116. The plaintiff was not a menial servant of the defendants. He was a salesman of experience, and they were entitled to the exercise of his best judgment, not contrary to their orders, but in harmony with them, as far as the two could go together, allowing neither to be turned to the prejudice or disadvantage of the employer. The jury evidently found that the plaintiff did the best he could for his employers, and that their order (everything considered) was unreasonable as a basis for the employé's discharge. The charge of engaging in a rival business was properly submitted to the jury, and was decided against the defendants. The case is not one free from doubt; it is one about which minds might differ. The trial judge could not have dismissed the complaint, nor directed a verdict in favor of the defendants. The case had to go to the jury, and their finding ought to be accepted as conclusive on the facts. We find no error in receiving or excluding evidence, and have concluded to affirm the judgment.